*In re* MARRIAGE OF THERESA MARGARET PARR, Petitioner-Appellant, and ERIC NORMAN PARR, Respondent-Appellee.

Fourth District   No. 4—03—0732

Opinion filed December 31, 2003.

Edward H. Rawles (argued), of Rawles, O'Byrne, Stanko & Kepley, P.C., of Champaign, for appellant.

Kerry R. Clapper (argued), of Clapper & Clapper, P.C., of Danville, for appellee.

Frederick H. Underhill, of Groppi, McNamara & Underhill, of Danville, guardian *ad litem*.

JUSTICE TURNER delivered the opinion of the court:

In February 2001, petitioner, Theresa Margaret Parr, filed a petition for dissolution of her marriage to respondent, Eric Norman Parr. In December 2002, petitioner filed a motion to amend her petition for dissolution, seeking sole custody of the parties' minor children and for leave to remove the children to Colorado. In August 2003, the trial court entered an order, awarding petitioner sole custody of the children but denying her request to remove the children to Colorado. The order also awarded respondent the federal and state tax exemptions for two of the three minor children for the years 2002, 2003, and all subsequent years.

Petitioner appeals, asserting the trial court erred by (1) denying her leave to remove the children to Colorado and (2) awarding respondent the federal and state tax exemptions for two of the three children. We affirm in part, reverse in part, and remand with directions.

## I. BACKGROUND

The parties were married in May 1988 and, during their marriage, had three children, Chelsie (born in October 1988), Brynn (born in August 1990), and Colton (born in May 1993). In 1990, the parties built a log cabin in Catlin, Illinois, where the parties resided the rest of their marriage. The three-bedroom home is built on 20 acres of land and has a barn that houses the family's numerous pets, including horses and donkeys.

At the time of their marriage, both parties had bachelor's degrees, and during the marriage, both parties worked outside the home. In January 1998, respondent obtained his master's degree in animal science. Shortly before graduation, he obtained employment with United Feeds in Frankfort, Indiana, which was about a 1-hour-and-25-minute drive from Catlin. Initially, he commuted daily to his job but, in spring 1998, he got an efficiency apartment in Frankfort and came home to Catlin on the weekends. At the time of the hearing, respondent was still employed at United Feeds as a research manager, earning approximately $46,173 per year.

In January 1999, petitioner obtained her master's degree in animal science. She then quit her full-time job with the University of Illinois and pursued her doctor of philosophy degree (Ph.D.) in animal nutri-

tion. While working on her Ph.D., she was a graduate assistant, earning $1,100 a month and receiving a tuition waiver. To help with living expenses, petitioner also obtained loans from the federal government, totaling $64,294.67, and checks from her father, Louis Cambier, totaling $50,000, which the trial court later found were gifts, not loans. Petitioner's assistantship was to end in March 2003, and she was to receive her Ph.D. in May 2003.

Since starting school, the children have attended Catlin Grade School and are involved in numerous activities. Each child has many friends that he or she has known since kindergarten. All three children are straight A students.

In February 2001, petitioner filed a motion for dissolution of marriage. In June 2001, the trial court granted a dissolution judgment on grounds only. In May 2002, the trial court appointed a limited guardian *ad litem* for the child-custody issue. In October 2003, the trial court ordered respondent to pay $417.28 in child support every other week (average of $904.10 per month).

In November 2002, Colorado Quality Research, Inc. (CQR), offered petitioner a position as investigator/director of nutrition with a base salary of $67,650 and a reasonable expectation of an additional 10% to 15% performance/profit-sharing bonus. CQR would also pay $5,000 to cover moving expenses and would pay 85% of petitioner's health insurance premium. The position's hours are 7 a.m. to 4 p.m., Monday through Friday, with almost no travel. CQR is located in Wellington, Colorado.

In December 2002, petitioner filed a motion to amend the petition for dissolution of marriage, requesting that the trial court grant her sole custody of the children and leave to remove them to Colorado so she could accept the CQR job offer. After a December 2002 hearing, the trial court granted petitioner's motion.

In March 2003, the trial court held a three-day hearing on the remaining issues, devoting the first two days solely to the issues of custody and removal. The last day dealt with financial issues. On that day, respondent requested he receive the state and federal tax exemptions for all three children for the year 2002 and all future years.

At the hearing, petitioner testified the University of Illinois did not have any positions available in her field. Petitioner had sent out 19 resumes and had worked with a headhunter. Most of the companies she contacted were in the Midwest. She only received one other job offer, which was from a company in Princeton, Missouri, paying $50,000 a year. She saw little opportunity of advancement with that job. Princeton was about a seven-hour drive from Catlin. According to petitioner, Catlin and the immediate area had no employment opportunities in which she could use her degree.

Petitioner further testified the CQR job offer was still available with the same terms. Since the November 2002 job offer, she has done a small amount of part-time work for CQR. Petitioner stated it is very difficult to do work from home because she needs to be out in the barns participating in the research. She sees a lot of potential with the CQR job, including the possibility of co-ownership.

Petitioner had been to the Wellington area four times, taking the children on one of the trips. Wellington is a town of 1,500 people, about 10 miles north of Fort Collins. Petitioner had contacted a realtor and had looked at homes in the rural Wellington area. She would like to buy a home with some acreage so she and the children can bring their pets with them. Because of the uncertainty of whether she can accept the CQR offer, she had not purchased or rented a home in Colorado. Petitioner acknowledged she has no relatives in Colorado.

Petitioner also investigated the schools and the medical facilities in the Wellington area. The Wellington schools offered similar extracurricular activities as the Catlin schools, and the children could ride the bus to school as they do in Catlin. Fort Collins has a youth medical clinic, offering services to both children and young adults.

If the trial court were to allow petitioner to move to Colorado, she was willing to work with respondent so he could have the children whenever the opportunity arose. She proposed allowing him to have the children six to eight weeks in the summer and half of Christmas break and other feasible breaks. Petitioner was willing to split the cost of transportation. According to petitioner, a flight from Indianapolis, Indiana, to Denver, Colorado, is about 2½ hours and costs $188 round trip. Wellington is approximately a 1-hour-and-15-minute drive from Denver.

Respondent testified he has the children every other weekend in Indiana and some holidays. He also went to some of the children's sporting events that were not during his visitation time. Respondent also does not have any family in Colorado.

The guardian *ad litem* recommended that the removal request be allowed but noted all of the children preferred to live in Catlin. However, the two older children did not express a strong preference against the move. The guardian *ad litem* also stated respondent had a close relationship with the children.

From January 2002 to September 2002, respondent paid the mortgage and barn loan payments, a total of $798.45 per month, in lieu of child support. Petitioner's May 2001 financial affidavit indicated her monthly net income was $3,420 and her monthly expenses were $5,423. Petitioner's March 2003 financial affidavit showed she had a monthly net income of $1,985 and monthly expenses of $5,561.45.

At the end of the hearing on custody and removal, the trial court announced it was awarding custody to petitioner but denying her request for removal. At the end of the hearing on the financial issues, the court requested the parties submit written closing arguments. In July 2003, the trial court sent a letter to the parties' counsel, setting forth its determination on all the remaining issues. In August 2003, the trial court entered a supplemental order to the dissolution judgment, (1) awarding petitioner sole custody of the children; (2) denying petitioner's request to remove the children to Colorado; (3) ordering respondent to pay $525 every other week in child support (average of $1,137.50 per month); (4) ordering the parties to split equally the children's uncovered medical expenses; and (5) awarding respondent tax exemptions for Brynn and Colton for the years 2002, 2003, and all subsequent years. This appeal followed.

## II. ANALYSIS

### A. Removal

Petitioner first argues the trial court erred in denying her request for leave to remove the children to Colorado.

■ Under section 609(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/609(a) (West 2002)), a trial court may only approve a custodial parent's removal of the minor children from Illinois when the approval is in the children's best interests. The burden of proving such removal is in the children's best interests is on the party seeking removal. 750 ILCS 5/609(a) (West 2002). Thus, petitioner bore the burden of proving that the move to Colorado was in the children's best interests. A determination of the children's best interests cannot be reduced to a simple bright-line test but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case. *In re Marriage of Eckert*, 119 Ill. 2d 316, 326, 518 N.E.2d 1041, 1045 (1988). A trial court's determination of what is in the children's best interests should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *Eckert*, 119 Ill. 2d at 328, 518 N.E.2d at 1046.

■ In *Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46, the supreme court identified five factors that should be considered in determining whether removal is in a child's best interests. Those factors are (1) whether the proposed move will enhance the quality of life for both the custodial parent and the children, (2) whether the proposed move is a ruse designed to frustrate or defeat the noncustodial parent's visitation, (3) the noncustodial parent's motives in resisting removal, (4) the noncustodial parent's visitation rights, and (5)

whether a reasonable visitation schedule can be worked out. *Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46. A reasonable visitation schedule is one that would preserve and foster the children's relationship with the noncustodial parent. *Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046.

Petitioner asserts the trial court did not balance the *Eckert* factors but instead treated the factors as prongs of a test in which petitioner had to meet every prong for the court to grant removal. In its oral ruling on the motion, the court stated petitioner bore the burden to demonstrate "she has satisfied the *Eckert* factors," noted that petitioner had not met the visitation factor, and then denied removal because "these factors have not been met." In its July 2003 letter to counsel, the trial court recounted that it found "[p]etitioner had failed to meet her burden of proof and had not satisfied the factors set forth in the *Eckert* decision and cases interpreting *Eckert*."

The aforementioned comments cause us concern, as the *Eckert* court did not establish a test in which the custodial parent must satisfy every prong. See *In re Marriage of Collingbourne*, 204 Ill. 2d 498, 523, 791 N.E.2d 532, 546 (2003); *In re Marriage of Eaton*, 269 Ill. App. 3d 507, 516, 646 N.E.2d 635, 643 (1995). In subsequent decisions, our supreme court has noted the *Eckert* factors are not exclusive and are only factors to be considered and balanced in determining whether removal is in the children's best interests. No individual factor is controlling, and the weight accorded each factor will depend on the case's facts. *Collingbourne*, 204 Ill. 2d at 523, 791 N.E.2d at 546; see also *In re Marriage of Smith*, 172 Ill. 2d 312, 321, 665 N.E.2d 1209, 1213 (1996). While the trial court clearly considered each *Eckert* factor, it appears the court required petitioner to satisfy each factor, rather than weighing and balancing the relevant factors to determine whether removal was in the children's best interests.

■ As to the first factor, the trial court found removal would enhance the quality of life for petitioner and the children from a financial standpoint. The court then noted that probably the quality of life for the children would not be better for the short-term because petitioner would have to adjust to her new job, the children would be in different schools, and petitioner probably could not afford a home with acreage as she has now.

However, the children and petitioner would experience change no matter where they lived because petitioner was going from a full-time student to a full-time job. The family dealt with a similar situation when petitioner left her employment to become a full-time student. Moreover, if courts looked only at the short term (the adjustment period), removal would be allowed only in a rare situation when the

children were in a good environment with good schools, good friends, and a nice home. Adjustment is part of any move. See *In re Marriage of Ludwinski*, 312 Ill. App. 3d 495, 504, 727 N.E.2d 419, 426 (2000) (noting the children would have to adjust to the move to Utah).

As to the second and third *Eckert* factors, the trial court found the motives of both parties were well-intentioned. Accordingly, those two factors do not weigh in favor of either party. See *Collingbourne*, 204 Ill. 2d at 531, 791 N.E.2d at 550.

The final *Eckert* factors address respondent's visitation. The trial court noted respondent had maintained regular visitation with the children and had gone to some of their school events. The court then found respondent would not be able to maintain frequent contact with the children if they lived in Colorado. After recounting his own experiences with his daughters, the trial judge concluded both parents have a right to share in the children's lives, the children have a right to have their parents involved in their activities, and thus a reasonable alternative visitation could not be arranged.

The aforementioned finding essentially gives a noncustodial parent, who has a good relationship with his or her children, the right to veto the custodial parent's desire to move out of Illinois no matter how legitimate and well-founded that desire is. The *Eckert* decision and the Act do not provide such a veto power to the noncustodial parent. See *Eaton*, 269 Ill. App. 3d at 514, 646 N.E.2d at 641. Our supreme court has agreed with this court that the custodial parent's interests should not be automatically subordinated to those of the noncustodial parent in a removal issue. *Collingbourne*, 204 Ill. 2d at 528, 791 N.E.2d at 548; *Ludwinski*, 312 Ill. App. 3d at 503, 727 N.E.2d at 425.

"Indeed, 'our society is a mobile one' (*Eckert*, 119 Ill. 2d at 330[, 518 N.E.2d at 1047]) and 'since a court has no power to require the noncustodial parent to remain in Illinois, or to require members of the extended family to remain in Illinois, some deference is due to the custodial parent who has already determined the best interests of her child[ ] *and* herself are served by remarriage and removal. The best interests of children cannot be fully understood without also considering the best interests of the custodial parent.' (Emphasis in original.)" *Collingbourne*, 204 Ill. 2d at 528, 791 N.E.2d at 548, quoting *Eaton*, 269 Ill. App. 3d at 515-16, 646 N.E.2d at 642.

While we agree with the trial court's concern about preserving the children's relationship with respondent, that concern must be *weighed* against the enhancement of the quality of life for both petitioner and the children. See *Ludwinski*, 312 Ill. App. 3d at 503, 727 N.E.2d at 425. In this case, petitioner's financial situation is an important issue

because (1) her sources of income were to soon end, (2) the child support payments were insufficient to meet her household's current needs, (3) petitioner expenses would soon be increasing because she would have to start repaying her student loans, and (4) no jobs in her field were available in the Catlin area. The children have a wonderful life in Catlin, but petitioner must have a job to maintain that life.

Moreover, petitioner testified her job (1) would require virtually no travel (only to attend conferences), (2) would not require her to work weekends, and (3) was with a family-oriented company that would allow her to have a flexible schedule to meet the children's needs. While respondent challenges the uncertainty of petitioner's plans to live in Colorado, petitioner testified her children were more important than the job, and she would not take the job if she could not bring the children. Thus, the indefiniteness of petitioner's residence in Colorado is understandable. Petitioner had thoroughly researched the Wellington area, which the evidence indicates is similar to Catlin, and emphasized her desire to find a home that could accommodate the family's pets.

Additionally, "[a]ny removal will have some effect on visitation, but the real question is whether a visitation schedule that is both reasonable and realistic can be created. It need not be perfect." *Eaton*, 269 Ill. App. 3d at 515, 646 N.E.2d at 642. This court has been confident in its conclusion that a visitation schedule can be fashioned to preserve a noncustodial parent's relationship with the children when the children are allowed to move outside the Midwest. See *Ludwinski*, 312 Ill. App. 3d at 505, 727 N.E.2d at 427 (Utah); *Eaton*, 269 Ill. App. 3d at 515, 646 N.E.2d at 642 (Florida). The quality of a relationship need not be adversely affected just because that relationship becomes a long-distance one. *Ludwinski*, 312 Ill. App. 3d at 504, 727 N.E.2d at 427. When effort is expended to establish a reasonable visitation schedule, close relationships can continue and even be enhanced. *Collingbourne*, 204 Ill. 2d at 533, 791 N.E.2d at 551, quoting *Ludwinski*, 312 Ill. App. 3d at 504-05, 727 N.E.2d at 427; see also *Eaton*, 269 Ill. App. 3d at 515, 646 N.E.2d at 642.

Here, we are dealing with three intelligent children who have two intelligent parents that love them very much. We are again confident that a reasonable visitation schedule can be established to preserve respondent's close relationship with the children.

In this case, respondent chose to take a job in his field and live outside Illinois. Petitioner desires to do the same. Petitioner has done a thorough job search of the entire Midwest, yielding no jobs in Illinois or near Catlin. Her reasons for removal are neither frivolous nor inadequate. See *In re Marriage of Branham*, 248 Ill. App. 3d 898, 904,

617 N.E.2d 1317, 1322 (1993) (noting when a parent has been diligent in exercising his or her visitation rights, courts should be reluctant to allow removal for frivolous or inadequate reasons). With a divorce comes adjustments and accommodations. Both the custodial and noncustodial parent should be permitted to go on his or her own way, and the children's best interest must be served within that context. *Collingbourne*, 204 Ill. 2d at 535, 791 N.E.2d at 552, quoting *Helentjaris v. Sudano*, 194 N.J. Super. 220, 230, 476 A.2d 828, 833 (1984).

Under these circumstance, we find the denial of petitioner's request to remove the children was against the manifest weight of the evidence.

## B. Tax Exemptions

Petitioner last contends the trial court erred in awarding respondent the state and federal tax exemptions for two of the three children.

■ This court has held that in dissolution of marriage proceedings, a trial court has the discretion to allocate the tax dependency exemption to the noncustodial parent and order the custodial parent to sign a declaration that he or she will not claim the dependency exemption. *In re Marriage of McGarrity*, 191 Ill. App. 3d 501, 504, 548 N.E.2d 136, 138 (1989). We will not disturb that allocation unless it is an abuse of discretion or the factual predicate for the decision is against the manifest weight of the evidence. *Stockton v. Oldenburg*, 305 Ill. App. 3d 897, 901, 713 N.E.2d 259, 262 (1999).

■ Petitioner contends that ordering a custodial parent who contributes a majority of a child's support to execute a waiver of his or right to claim a tax exemption for that child is a violation of the supremacy clause of the United States Constitution (U.S. Const., art. VI). However, she fails to cite authority supporting her argument in violation of Supreme Court Rule 341(e)(7) (210 Ill. 2d R. 341(e)(7)). This court has often stated the failure to cite legal authority in the argument section of a party's brief forfeits the issue for review. See *Campbell v. Wagner*, 303 Ill. App. 3d 609, 613, 708 N.E.2d 539, 543 (1999). Accordingly, petitioner has forfeited this argument.

Petitioner also alleges respondent failed to meet his burden of proof that he was entitled to the tax exemptions. Here, respondent testified to the amount of his contributions to the children's care and presented petitioner's financial affidavit as evidence. While respondent did not present an actual figure of the children's monthly expenses (which would be beneficial to both the trial and reviewing courts in analyzing this issue), we find the above evidence was sufficient to meet his burden of proof.

Finally, petitioner argues the trial court abused its discretion in awarding the tax exemptions because it failed to make the award based on the relative contributions made by the parents to the children's monthly expenses. However, in its July 2003 letter to counsel, the trial court noted it "must consider the non[ ]custodial parent's contribution as it relates to the actual cost of supporting the minor children." In support of her argument, petitioner points to her financial affidavit that lists *her* monthly expenses as over $5,000. Her affidavit clearly lists items that are solely related to her and not the children. Additionally, respondent presented testimony that certain household expenses were also solely petitioner's.

Accordingly, we find the trial court did not abuse its discretion in awarding respondent two of the three tax exemptions for the years 2002 and 2003.

Petitioner also asserts that the trial court abused its discretion in awarding respondent two tax exemptions for future years because such an award is arbitrary and speculative. However, petitioner again fails to cite authority and has forfeited this issue. See *Campbell*, 303 Ill. App. 3d at 613, 708 N.E.2d at 543.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's allocation of the federal and state tax exemptions, reverse the court's denial of petitioner's request for removal, and remand for the limited purpose of setting a visitation schedule.

Affirmed in part and reversed in part; cause remanded with directions.

STEIGMANN and APPLETON, JJ., concur.