NO. 4-06-0065     Filed 10/27/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| DESIREE FORD, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| STEVEN MARTENESS, | ) | No. 00F6 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Robert M. Travers, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Desiree Ford, mother and custodial parent of Noah Ford, pursuant to section 14 of the Illinois Parentage Act of 1984, filed a petition in the Livingston County circuit court seeking to remove Noah from the State of Illinois to Colorado due to her pending marriage with Anton Giacometti.  750 ILCS 45/14 (West 2004).  Defendant, Steven Marteness, Noah's father, filed a petition requesting the trial court deny removal.  In December 2005, the trial court denied the removal petition.  This appeal followed.  We reverse and remand with directions.

I. BACKGROUND

Noah Ford was born on August 25, 1999.  His parents, Desiree, 27 years old, and Steven, 48 years old, have never been married to each other and never lived together.

Desiree is seeking removal so she can move Noah to Colorado to live with Giacometti.  Desiree and Giacometti were

engaged to be married on March 17, 2006. At the time of trial, Desiree lived with her parents in Dwight, sharing a bedroom with Noah. She was employed as a bartender and worked three nights a week. Her average income was $300 per week.

Steven lives in Peoria. At the time Desiree became pregnant, he lived in Joliet but moved shortly after the pregnancy. When Desiree first told Steven she was pregnant, Steven suggested she have an abortion. Whatever relationship the two had effectively ended at this point. Steven moved to Peoria. He did not contact Desiree during the pregnancy and was not present when Noah was born. He did not see Noah until three to four months after Noah's birth, after Desiree initiated contact.

Steven has another child and pays child support for that child. After his child-support payments, Steven earns approximately $30,000 per year. He is entitled to visitation with Noah from 7 p.m. Friday evening until 7 p.m. Sunday evening on alternating weekends. In practice, however, Steven has Noah from noon on Saturday until 6 p.m Sunday. Other than this visitation, Steven and Noah have little other contact.

Desiree's fiancé at the time of trial, Giacometti, lives in Greeley, Colorado. Greeley is approximately 45 miles north of Denver. He is 36 years old and has never been married. He is employed as an assistant pressman at R.R. Donnelley and earns between the mid 40's to $50,000 per year. Giacometti has been

employed at Donnelley's for 15 years, earning promotions through-out the years. In 1999, Giacometti purchased a two-bedroom, 1,600-square-foot home in an area of Greeley, where property values have been increasing. He has a good relationship with Noah and has taken him fishing and to baseball games, and he plays video games with him.

Upon moving, Desiree intends to quit her job as a bartender and attempt to obtain employment in Greeley. She stated she did not want to bartend anymore and instead would look for a daytime job. She is very close with her parents. She has lived with them most of her life. During trips to Illinois to visit her parents, Desiree has stated she would contact Steven so he could visit Noah. She has stated Noah could fly from Denver to Chicago to visit Steven for extended periods during the summer and Christmas. Giacometti testified he had no problem with Steven visiting Noah in Colorado.

The trial court made a determination of the best interests of the child based on these facts. After weighing the factors outlined in In re Marriage of Eckert, 119 Ill. 2d 316, 329-30, 518 N.E.2d 1041, 1046-47 (1988), the court determined removal was not in Noah's best interests and denied Desiree's petition. Desiree appeals.

## II. ANALYSIS

In removal cases where the custodial parent and

noncustodial parent were never married, the Illinois Parentage Act states a court is to apply section 609 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609 (West 2004)). Fisher v. Waldrop, 221 Ill. 2d 102, 114, 849 N.E.2d 334, 341 (2006). When a party with custody of a minor child seeks to remove the child from Illinois, it is incumbent upon the party seeking removal to prove removal is in the best interest of the child, considering the impact on visitation, as well as other relevant factors. 750 ILCS 5/609(a) (West 2004). The custodial parent has the burden to establish that the move would be in the child's best interest. Eckert, 119 Ill. 2d at 329-30, 518 N.E.2d at 1046-47. "A trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred." Eckert, 119 Ill. 2d at 328, 518 N.E.2d at 1046.

In deciding whether removal is in a child's best interest, the trial court should hear all relevant evidence. There is no "simple bright-line test," but determinations must be made on a case-by-case basis depending on the circumstances of each case. Eckert, 119 Ill. 2d at 326, 518 N.E.2d at 1045. The supreme court has suggested five factors that may aid a trial court. The trial court should consider (1) the proposed move in terms of likelihood for enhancing the general quality of life for

both the custodial parent and the children; (2) the motives of the custodial parent in seeking the move to determine whether the removal is merely a ruse intended to defeat or frustrate visitation; (3) the motives of the noncustodial parent resisting the removal; (4) the visitation rights of the noncustodial parent; and (5) if a realistic and reasonable visitation schedule can be reached. Eckert, 119 Ill. 2d at 326-28, 518 N.E.2d at 1045-46.

No one factor is controlling. The Eckert factors are to be considered and balanced by the trial court when making its determination, "'and the weight to be given each factor will vary according to the facts of each case.'" In re Marriage of Collingbourne, 204 Ill. 2d 498, 523, 791 N.E.2d 532, 546 (2003), quoting In re Marriage of Smith, 172 Ill. 2d 312, 321, 665 N.E.2d 1209, 1213 (1996).

The trial court found the move would enhance the quality of Desiree's life. She would be living with her husband and son in a 1,600-square-foot home in Greeley, Colorado. Her husband would be supplying financial support. The court found no further benefit for the move to Greeley, Colorado, because nothing was introduced into evidence about crime rates, test scores, and schools. The court found the only increase in quality of life for the child would be that he would be with his mother.

The trial court found Desiree's removal motive was not

a ruse but a genuine desire to move based on Desiree's love for her fiancé. The court also found Steven's motive for resisting removal was not in bad faith but to only maintain contact.

In addressing Steven's visitation rights, the trial court discussed the testimony that Steven was a less-than-enthusiastic parent, noting "[p]arenting styles differ." The court then found Steven was not "a reluctant parent."

When considering whether a reasonable visitation schedule could be reached if the move is allowed, the trial court found removal would make visitation difficult. The court stated when setting up visitation, the goal should be for the child to have frequent contact with both parents. The court noted Steven does not have great financial resources, and Desiree would be quitting her job as a bartender, which she worked three night a week, when she moved. Based on these facts, the court found the parties would have difficulty affording the transportation necessary for Steven to exercise his visitation rights.

The trial court also found significant the fact the child would be removed from both his maternal and paternal grandparents as well as his father. The trial court weighed the factors and determined that removal to Colorado was not in the best interest of the child and denied removal.

Removal cases are difficult. This is especially so when neither parent demonstrates bad faith. Therefore, an

appellate court presumes the result reached by the trial court is strong and compelling in this type of case. Collingbourne, 204 Ill. 2d at 522, 791 N.E.2d at 545. However, in this case we find the trial court's denial of removal was against the manifest weight of the evidence and reverse.

In considering the benefit the move would have on Desiree, the trial court found she would be able to live with a man she loves, who would provide financial support, and live in a 1,600-square-foot home. However, the benefits as supported by testimony are much greater.

Desiree is 27 years old, lives with her parents and son, and works three nights a week making approximately $100 a night. By moving to Colorado, she will be able to live with her husband. This will be a significant improvement in her life. The testimony suggests Giacometti will be a good husband. He has worked for the same company for over 15 years, earning promotions. He makes a respectable living and owns a home in an area where property values are rising. He works traditional hours, which will enable him to spend time with Desiree and her son. Desiree testified she would seek employment in Colorado, but not as a bartender. She wants to work during the day. There is no evidence of what employment she would seek, but it is certainly conceivable she would be able to earn an income similar to her present income. If she works during the day, that would allow

for three extra nights a week she would have to spend with her son.  She will also have a home of her own and will no longer be required by economic constraints or comfort to live with her parents.

The prospects for the enhancement of the child's life were understated.  The trial court found only that he would be happier with his mother.  However, the child will experience benefits with the increase in his mother's quality of life.  "'The best interests of children cannot be fully understood without also considering the best interests of the custodial parent.'"  Collingbourne, 204 Ill. 2d at 528, 791 N.E.2d at 548, quoting In re Marriage of Eaton, 269 Ill. App. 3d 507, 515-16, 646 N.E.2d 635, 642 (1995).

These are not indirect benefits.  Noah will be the direct beneficiary of economic security and more time with his mother.  Testimony suggested Giacometti has been active in the child's life.  Giacometti has taken the child fishing and to baseball games in St. Louis and Colorado, has played video games with him, and has talked to the child on the phone when he calls Desiree.  In Colorado, the child would have his own bedroom, as opposed to now where he shares a room with his mother.  No compelling evidence was presented that the schools in Greeley are better than in Dwight; however, nothing indicates the schools are worse either.  By moving, Noah will be living in a home with two

- 8 -

adults in a loving relationship, likely with two incomes. He would have his own room, which will allow him privacy. Giacometti appears to have the child's best interest in mind. This is an increase in the quality of the child's life that should have been considered by the trial court.

In conducting a best-interests inquiry, the trial court must "'consider the proposed move in terms of likelihood for enhancing the general quality of life for both the custodial parent and the children.'" (Emphases in original.) Collingbourne, 204 Ill. 2d at 525, 791 N.E.2d at 547, quoting Eckert, 119 Ill. 2d at 326-27, 518 N.E.2d at 1041. Courts should consider the potential of the move for increasing the general quality of life for both the custodial parent and the child, including any benefit the child may experience from the parent's life enhancement. Collingbourne, 204 Ill. 2d at 525, 791 N.E.2d at 547. Desiree's quality of life will be significantly enhanced by the move to Colorado. There is a nexus between the well-being of the custodial parent and the child who is in that parent's care that must be considered by the trial court when making its determination. Collingbourne, 204 Ill. 2d at 526, 791 N.E.2d at 547. The trial court did not give the increase in Desiree's quality of life the appropriate weight it deserved. While the trial court was thoughtful and conscientious in listening to the evidence and rendering a decision, we conclude the direct bene-

- 9 -

fits to Noah were not fully considered. We find the trial court's determination was against the manifest weight of the evidence.

In determining the second and third factors dealing with the motive of the parents, the trial court found no bad faith on the part of either party. The record supports this interpretation.

Pursuant to the fourth factor, the visitation rights of the noncustodial parent must be considered, as it is in the best interest of the child to have a healthy relationship with both parents and other family members. The trial court is to determine if a reasonable visitation schedule could be reached. A reasonable visitation schedule is one that "'will preserve and foster the child's relationship with the noncustodial parent.'" Collingbourne, 204 Ill. 2d at 523, 791 N.E.2d at 545, quoting Eckert, 119 Ill. 2d at 327, 518 N.E.2d at 1041.

The trial court found the proposed Christmas and summer visits, as well as visits when Desiree returned to Illinois with the child, would not foster the child's relationship with Steven. The court reasoned such visits would be a reduction in the quality of Steven's current visits because of the lack of frequent contact. However, if removal is denied every time a noncustodial parent's visitation would be modified to less frequent but longer periods, removal would likely only be granted

in two unique situations. The first would be when both parents live on the Illinois border and the custodial parent seeks removal to move across the border. For example, when the parents both live in Quincy and the custodial parent wants to move to Hannibal, Missouri. The other situation would be when parents possess significant wealth and few time restraints that would allow for frequent travel.

This interpretation is against the intent of the General Assembly, which allowed removal from Illinois upon a proper showing the move is in the child's best interest. 750 ILCS 5/609(a) (West 2004). A court has no power to require noncustodial parents and extended family to remain in Illinois. Thus, "'some deference is due to the custodial parent who has already determined the best interests of her child[] and herself are served by'" marriage and removal. (Emphasis in original.) Collingbourne, 204 Ill. 2d at 528, 791 N.E.2d at 548, quoting Eaton, 269 Ill. App. 3d at 515-516, 646 N.E.2d at 642.

While the noncustodial parent would ideally be able to see his or her child on a frequent basis, that is not always possible. However, if a realistic and reasonable visitation schedule can be reached, the trial court should take that into consideration. The record shows Desiree has made significant steps to ensure Steven is in the child's life. Steven did not have contact with the child until Desiree initiated contact.

Desiree testified she would be willing to set up a webcam for the child and Steven to communicate. She also stated she is close to her parents, as evidenced by the fact she has lived with them most of her life, and would be visiting Illinois often. Desiree stated she would contact Steven to set up visitation with the child on such trips. Desiree stated she would allow the child to visit Steven during Christmas and summer for extended periods. Giacometti expressed willingness for Steven to visit Colorado when Steven would choose. Further, in this day of inexpensive telephone communication, Steven would not be financially burdened to call the child, and nothing in the record indicates such a call would not be welcomed. There is a high probability a realistic and reasonable visitation schedule can be reached.

The trial court also found the limited finances of the parties would prohibit a realistic and reasonable visitation schedule. After paying child support for two children, Steven earns a gross income of approximately $30,000. Also, Desiree has limited resources and now intends to quit her job. The distance between Colorado and Illinois requires significant expense, whether Steven travels to Colorado or the child travels to Illinois. The court found this fact would prevent the preservation and fostering of the relationship between Steven and his son.

Certainly it is proper to consider the finances of the

parents when making a removal decision; however, denying removal because of the cost of travel would allow only the affluent to successfully petition the court to remove. The record does not support the position the parties would not be able to afford the travel. Desiree traveled to Colorado five times from March 2005 to December 2005. This indicates her financial resources do not prohibit travel. While Desiree indicated she would stop bartending, she also stated she was going to seek employment. Desiree would likely be able to find employment with a similar income of $300 a week. Also, she will be married to a man who makes a respectable income. Therefore, the record establishes Desiree will be at least as, if not more, able to provide transportation for her son to travel to Illinois.

Steven's situation is not as clear. Saved gasoline expenditures that would have arisen from the round-trip from Peoria to Dwight twice a weekend, twice a month, should help offset the burden of his share of travel costs. However, Steven's costs will likely increase. Such a result is unfortunate, but the interests of the custodial parent should not be automatically subordinated to the interests of the noncustodial parent in removal cases. Collingbourne, 204 Ill. 2d at 528, 791 N.E.2d at 548. Perhaps an agreement could be reached requiring Steven to pay half or less than half of any of the child's travel cost. However, Steven's financial position should not force Desiree to

choose between giving up custody of her son or giving up a life with the man she loves and providing a fuller family life for Noah.

Finally, the trial court considered the effect the removal would have on the child's contact with his grandparents. That is a valid consideration but when weighed against the other factors should not prevent removal. Desiree's parents did not testify. Desiree would visit them in Illinois often and indicated they have a close relationship. This suggests Noah would continue to have significant contact with them. Noah's paternal grandparents had contact with Noah only when he visited with Steven. That modest contact could continue after removal. The record does not show Noah will be disadvantaged or harmed by a change in contact with his grandparents so as to make that a determinative factor.

The increase in the quality of life to Desiree and the child will be significant. The trial court did not evaluate and weigh those factors appropriately and gave too much weight to Steven's situation. The trial court found Steven was not a reluctant parent and noted parenting styles differ. Parenting styles differ in intact marriages and relationships, but meaningful engagement in the life of a child requires a knowledge of and participation in a child's school activities, extracurricular activities, and the child's community. It also requires some

effort to maximize allotted visitation. Given Steven's economic situation and his distance from Dwight, perhaps he has done as well as can be expected. However, his involvement in Noah's life is not sufficient to trump the intertwined best interests of Noah and Desiree that will be served by removal.

Removal cases are difficult for courts to decide. No matter the outcome, one party's life will likely be affected detrimentally. However, based on the increase in the quality of life to Desiree and Noah, we find it was against the manifest weight of the evidence to deny removal. It is in the best interest of Noah to move to Colorado with his mother. We commend Desiree and Steven for their cooperation. Further cooperation in establishing a visitation schedule may enhance Noah's relationship with both parents. We reverse the trial court's judgment and remand the cause for the limited purpose of setting a visitation schedule.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand with directions.

Reversed and remanded with directions.

McCULLOUGH and COOK, JJ., concur.