*In re* MARRIAGE OF DAVID JOHNSON, Petitioner-Appellant, and DONNA (JOHNSON) HORTON, Respondent-Appellee.

Fifth District    No. 5—95—0438

Opinion filed February 2, 1996.

676

Robert E. Wells, Jr., of Pessin, Baird, Wells & Ward, of Belleville, for appellant.

John J. Kurowski, of Kurowski Law Firm, P.C., of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Petitioner, David Johnson, appeals from the trial court's order granting the petition of respondent, Donna Horton, to remove the parties' daughter, Kara, from Illinois to Texas. David Johnson and Donna Horton (f/k/a Donna Johnson) were married on December 11, 1976. Kara, their only child, was born on January 17, 1987. The couple divorced on February 14, 1990. A joint parenting agreement provided for joint custody with Donna as the primary residential parent, and it provided that both parents shall jointly decide the important matters pertaining to Kara's upbringing.

In February of 1991, Donna married Bill Horton. In April of 1993, Bill was permanently transferred to Dallas, Texas.

On April 18, 1994, Donna filed a petition to remove Kara to Texas. A hearing was conducted on October 20, 1994. On January 18, 1995, and April 17, 1995, the court made findings pursuant to the hearing. On June 12, 1995, the circuit court granted Kara's petition, finding that in light of the standards set out in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041, the petition should be granted. David Johnson appeals this ruling, alleging that it is against the manifest weight of the evidence. We agree and reverse the order of the circuit court.

At the hearing, testimony was elicited from Donna Horton, Bill Horton, David Johnson, Cindy Johnson, and David Johnson's parents. Testimony revealed that Bill Horton is originally from Texas and was transferred to St. Louis in July of 1989. Bill was previously married and has two sons from his previous marriage who reside in Texas. Donna met Bill in May of 1990. They married in February of 1991 and have one child, Emily, who was 10 months old at the time of the hearing. Both Donna and Bill have been employed by Southwestern Bell for more than a decade, and both intend to finish their careers with Southwestern Bell.

At the time of his transfer to St. Louis, Bill knew that he would not permanently remain in the St. Louis area because he was on a rotational assignment. As expected, in May of 1992, Bill was reassigned to Dallas, Texas. He was given a temporary assignment in San Antonio, Texas, but as of April 1993, he was permanently assigned to Dallas. According to Bill's testimony, he did not oppose a transfer to Texas because he wanted to be close to his sons and he felt that by not accepting a transfer, he would be harming his career with Southwestern Bell.

Since the transfer, Bill has been living in an apartment in Texas, and Donna has been living in Illinois. Donna testified that the distance has put a strain on their relationship and that ultimately

they will not to be able to financially maintain this living arrangement. Donna testified that she feels confident that if she moves to Texas, Southwestern Bell will have a position for her. Donna also stated that she and Bill intend to purchase a four-bedroom home if the removal is granted. Finally, Donna testified that Kara has met Bill's family and that Kara gets along with Bill's sons.

During the first six months of Kara's life, Donna was the primary care giver. After the first six months, David became the primary care giver. This arrangement was established because David was a registered nurse and Donna was earning a higher salary than David. David was employed part-time during this period. This arrangement continued until Kara was $2^1/2$ years old, at which time David returned to working full-time as a registered nurse.

The evidence shows that since the parties' divorce David has been extensively involved in Kara's life. Donna testified that David would see Kara two out of five days a week and that 40% to 50% of Kara's time would be spent with David. Cindy Johnson, David's new wife, testified that they would take Kara on picnics, to parades, to church, for bicycle rides, and to the library. David testified that he provides most of Kara's transportation so that he can visit her more frequently. David testified that it is important for him to be with her on a regular basis and that if the removal is allowed, phone contact could not replace the day-to-day personal contact he currently enjoys. There was no evidence disputing that Kara has a very close relationship to both Donna and David.

Kara's paternal grandparents testified that they have had contact with Kara at least two or three times a month, that Kara has spent the night at their house, that they have picked Kara up from school, and that they have participated in various activities with her, such as bicycling and camping. Kara has a close relationship with her parental grandparents. Further, the evidence shows that most, if not all, of Kara's relatives reside in close proximity to her Illinois home.

In ruling on the petition, the circuit court noted in its findings that it did not consider this to be an easy decision. It stated:

> "At the conclusion of the testimony in this matter I was inclined to believe that the extraordinary involvement of Mr. Johnson in Kara's life *** was so overwhelming that the petition for removal filed by Mrs. Horton probably should be denied. However, *** in the light of the *Eckert* factors [(*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041)] and other case law, I am persuaded that the petition should be granted. In fact, I believe denial of the petition would be reversed by the Appellate Court for the Fifth District; the Appellate Courts are becoming more and more liberal in allowing removal ***."

The trial court proceeded to make its findings in letters dated January 18, 1995, and April 17, 1995.

The court found that reasonable visitation was possible, and the court granted David physical custody for approximately 91 days, which include a teacher-conference weekend in late September, Thanksgiving weekend, one week during Christmas, the weekend of Washington's birthday, Easter weekend, spring break, and eight weeks during the summer. Mrs. Horton was required to pay for her daughter's travel expenses.

The court also found that removal would relieve the stressful situation created by Donna and Bill Horton's current living arrangement and that this would indirectly enhance Kara's general quality of life. The court also found that the schools and communities in Texas were comparable and that the contemplated living arrangements were satisfactory. An order was issued by the court on June 12, 1995, granting the removal petition. David Johnson now appeals, contending these findings are against the manifest weight of the evidence.

■ Section 609 of the Illinois Marriage and Dissolution of Marriage Act governs petitions for removal. (750 ILCS 5/609 (West 1994).) The section provides in part:

"(a) The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." (750 ILCS 5/609(a) (West 1994).)

The Illinois Supreme Court has identified five factors to consider in determining whether removal is in the child's best interest: (1) the likelihood that the proposed move will enhance the general quality of life for both the custodial parent and the child; (2) the motives of the custodial parent in seeking the removal; (3) the motives of the noncustodial parent in resisting the removal; (4) the visitation rights of the noncustodial parent; and (5) whether a realistic and reasonable visitation schedule can be reached if the removal is allowed. *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 326-27, 518 N.E.2d 1041, 1045-46.

■ A trial court's determination regarding removal should not be reversed unless it is clearly against the manifest weight of the evidence and it appears a manifest injustice has occurred. (*Eckert*, 119 Ill. 2d at 328, 518 N.E.2d at 1046.) A determination of the child's best interest cannot be reduced to a simple bright-line test but must be

made depending upon the circumstances of each case. *Eckert*, 119 Ill. 2d at 326, 518 N.E.2d at 1045.

We shall now turn to the trial court's application of the *Eckert* factors and consider petitioner's argument that the court's findings are against the manifest weight of the evidence.

■ The first factor we shall examine is the trial court's finding that removal will enhance the general quality of life for both Donna and Kara. In this case, there is no dispute that the move will enhance the general quality of life for Donna Horton. However, this court has held that merely because a move out of State would enhance the custodial parent's quality of life, this is insufficient, standing alone, to merit the granting of a petition for a child's removal. (*In re Marriage of Pfeiffer* (1992), 237 Ill. App. 3d 510, 514, 604 N.E.2d 1069, 1072.) But this court has noted that a move which enhances a custodial parent's quality of life indirectly benefits a child's removal. (*In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 189, 529 N.E.2d 780, 782.) Yet in order to prove that a child's best interests will be served by such removal, a custodial parent must prove more than his or her own desire to live with a new spouse. *Eckert*, 119 Ill. 2d at 325, 518 N.E.2d at 1044.

The trial court placed great weight on Donna Horton's improved quality of life and, hence, based its decision on the indirect benefits Kara may receive if the removal is granted. In its findings, the trial court specifically found:

"[R]emoval here will benefit Mrs. Horton by relieving the stress of the current arrangement for the reasons to which she testified, and for other obvious reasons, and which, in the final analysis, should indirectly enhance Kara's general quality of life with respect to her mother."

Further in its findings, the court stated:

"[A]lthough I do not *know* that the move to Texas will directly enhance Kara's general quality of life, as I do not know how one quantifies the enhancement which will result from less stress in her mother's current marriage versus the loss of some of the intimate contact she now has with her father, I do believe the schools and the communities are comparable, the contemplated living arrangements are satisfactory and I do not believe her general quality of life will be diminished ***." (Emphasis in original.)

The trial court also noted that a denial of this petition might lead to a divorce between Donna and Bill and that it would not be in Kara's best interest to suffer through a divorce between her mother and her present husband.

The court's focus at all times must remain on the best interests

of the children. (*In re Marriage of Berk* (1991), 215 Ill. App. 3d 459, 465, 574 N.E.2d 1364, 1368.) The burden of proving that removal is in the best interests of the child is on the party seeking the removal. (*Eckert*, 119 Ill. 2d at 325, 518 N.E.2d at 1045.) The trial court stated in its findings that removal "should" indirectly enhance Kara's general quality of life, but the court did not know if the move "will" directly enhance Kara's general quality of life. It seems clear, from the trial court's statements, that there is some uncertainty as to whether Kara's quality of life will actually be enhanced.

Donna argues that she and Bill are supporting two households and that if they are allowed to remove Kara to Texas, Bill will be able to assist in household chores which will provide her with more quality time to spend with Kara. Donna also contends that the school Kara would be attending in Texas has received the highest five-star rating and that the school has a better computer program. However, there was no proof introduced as to what degree the school in Texas is of better quality than the school in Illinois.

Upon our review of the record, we are unable to find that removal will have a direct benefit or a direct enhancement to the quality of Kara's life. The trial court found that the school and the community in Texas are comparable to those in Illinois, and we find no evidence which shows otherwise. Further, there will be no change in Donna's or Bill's salary. Also, Donna plans to continue working, so her time at home with Kara will not increase. The only possible benefit shown by removal arises from Donna's improved marital relationship. This alone is insufficient to show that removal will enhance Kara's quality of life. *Pfeiffer*, 237 Ill. App. 3d at 514, 604 N.E.2d at 1072.

Regarding the second and third factors of the *Eckert* test, there is no evidence which shows that the motives of Donna seeking the removal or the motives of David opposing the removal are anything but well intentioned. Therefore, we do not need to address these factors.

Lastly, we consider the fourth and fifth *Eckert* factors together, *i.e.*, the visitation rights of the noncustodial parent and whether a realistic and reasonable visitation schedule can be reached if the move is allowed.

A child has an interest in maintaining significant contact with both parents following a divorce. (*Eckert*, 119 Ill. 2d at 325, 518 N.E.2d at 1044.) "[I]t is in the best interests of children to have a healthy and close relationship with both parents, as well as with other family members, and thus the visitation rights of the noncustodial parent should be carefully considered." (*In re Marriage of Stone* (1990), 201

Ill. App. 3d 238, 243, 559 N.E.2d 92, 95.) A reasonable visitation schedule will preserve and foster the child's relationship with the noncustodial parent. (*In re Marriage of Gibbs* (1994), 268 Ill. App. 3d 962, 968-69, 645 N.E.2d 507, 513.) "If the noncustodial parent has diligently exercised his rights, the court should not interfere with those rights for frivolous, unpersuasive, or inadequate reasons; however, if the noncustodial parent has not exercised his rights, the custodial parent should be free to move if it is in the child's best interests." (*Gibbs*, 268 Ill. App. 3d at 969, 645 N.E.2d at 513.) When a parent has diligently exercised visitation rights, a court should be reluctant to interfere with those rights by allowing removal for unpersuasive or inadequate reasons. *Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046.

■ David has diligently exercised his visitation rights and has been extensively involved with Kara's day-to-day activities. There is no evidence that shows otherwise. David was the primary care giver when Kara was six months old until she was $2^1/2$, and David has participated in Kara's education, religious training, medical care, extracurricular activities, and familial relationships. David has taken Kara on picnics, to parades, and to church and has provided some of her transportation from school. The record shows that for the previous year David Johnson has seen Kara at least a couple of days each week (except when he was on his honeymoon or when Kara went camping with David's parents), and about 50% of Kara's time was spent with David. David testified that he would drive Kara to her activities so he could spend more time with her. The trial court recognized that David had an "extraordinary involvement" in the life of his daughter.

The court's visitation schedule granted respondent approximately 91 days of visitation per year. Upon a review of the evidence, we observe that David has seen Kara on more than 90 days in the past six months. This amounts to at least a 50% reduction in visitation. (*In re Marriage of Davis* (1992), 229 Ill. App. 3d 653, 665, 594 N.E.2d 734, 742 (a 35% reduction in visitation was found unreasonable where there was an inadequate showing the move by the custodial parent will enhance the quality of the child's life); *In re Marriage of Berk* (1991), 215 Ill. App. 3d 459, 467, 574 N.E.2d 1364, 1370 (a reduction of visitation by almost one-fifth is substantial).) In light of the "extraordinary involvement" on the part of David with Kara's life, we find this visitation to be unreasonable.

■ Upon a review of the evidence, we find the court's finding that removal is in Kara's best interest to be against the manifest weight of the evidence. The evidence does not support a finding that upon re-

moval Kara's quality of life will be improved and that a reasonable visitation schedule can be reached. The purpose of the *Eckert* factors is not to establish a test in which the petitioner must pass every prong, but only to set forth factors to be considered and balanced. *In re Marriage of Eaton* (1995), 269 Ill. App. 3d 507, 516, 646 N.E.2d 635, 643.

The only evidence introduced that the removal would be in Kara's best interests is inferred from the mother's improved quality of life. Donna had the burden of showing that removal is in Kara's best interests. The trial court specifically found that Kara's quality of life will not "be diminished" and that through Donna's improved living situation Kara's quality of life "should" indirectly be enhanced. This is all at the expense of David's lifelong close relationship with Kara. If the obvious happiness the spouse would receive from being able to live with a new spouse were sufficient to prove that removal is in the best interests of the child, court supervision of the proceedings would be unnecessary and, at best, ceremonial. (*Berk*, 215 Ill. App. 3d at 466, 574 N.E.2d at 1369.) David has diligently established and maintained a close relationship with Kara ever since her birth. We also note that most, if not all, of Kara's relatives reside within close proximity to her home in Illinois. The removal of his daughter some 550 miles away, which may improve the relationship between Donna and Bill, will have a damaging effect on the relationship of Kara and David, as well as her relationship with her extended family. We hold that the circuit court's finding that removal is in Kara's best interests is clearly against the manifest weight of the evidence, and upon removal, a manifest injustice would occur.

David's additional arguments on appeal need not be addressed in light of our decision.

For the foregoing reasons, we reverse the decision of the circuit court and remand with directions to deny the petition for removal.

Reversed and remanded with directions.

MAAG and CHAPMAN, JJ., concur.