*In re* MARRIAGE OF EDWARD J. MAIN, Petitioner-Appellant, and CYNTHIA I. MAIN, Respondent-Appellee.

Second District    No. 2—05—0748

Opinion filed November 10, 2005.

Thomas G. Kenny, of Kenny & Kenny, of Wheaton, for appellant.

Tracy M. Weber, of Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, of Terre Haute, Indiana, for appellee.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Petitioner Edward Main timely appeals the judgment of the circuit

court of Du Page County granting respondent Cynthia Main's petition for permanent removal of the parties' minor children to Florida and modifying petitioner's rights of visitation with the children. On appeal, petitioner argues that the trial court's finding that removal is in the children's best interests was against the manifest weight of the evidence in concluding that (1) the proposed move would enhance the quality of life for respondent and the children; (2) petitioner's visitation would be enhanced by the move to Florida and a reasonable visitation schedule could be devised; and (3) petitioner had not fully exercised his rights to visitation while respondent and the children lived in Illinois. For the reasons that follow, we affirm.

The parties married in 1989, and they divorced on May 8, 2003. Respondent appealed the portion of the trial court's divorce order requiring her to move with the parties' two minor children back to Illinois from Florida, where they had moved after the parties separated, and this court affirmed the trial court's judgment in an unpublished order. *In re Marriage of Main*, No. 2—03—0891 (2004) (unpublished order under Supreme Court Rule 23). In August 2004, after petitioner filed a petition to enforce the divorce judgment, respondent and the children moved back to Illinois. In February 2005, respondent filed a petition for permanent removal of the children to Florida, and a hearing was held on the removal petition on May 26, 2005.

Petitioner was the first witness to testify at the hearing. He testified that the drive from his home to respondent's home in Marshall, Illinois, takes approximately 4½ hours each way and that, after incurring both an abdominal condition and a shoulder injury, such prolonged sitting was very difficult for him. He testified that he had driven to Marshall to visit the children only five times between September 2004 and the time of the hearing, and he said that, after a surgery to correct his abdominal condition in April, he had driven to Marshall only once. He stated that he has been to, but never inside, the children's school. He testified that there was only one occasion when he visited his children on a day that was not part of his scheduled visitation days. On that occasion he watched his son compete in a Boy Scout Pinewood Derby model car racing competition. He also attended the children's church play and his son's first communion. The record is not clear as to whether those two events occurred during petitioner's scheduled visitation. Though he admitted to never having attended the parties' daughter's swim meets or soccer matches, petitioner also stated that he was never notified that those events were to take place.

Petitioner said that, when he visited the children in Marshall for a weekend, he would typically arrive on Friday evening. He said that the children were usually ready for sleep by the time he would arrive,

but, on the one occasion they were still awake, he took them for ice cream. Petitioner indicated that, on Saturdays, he would entertain the children by taking them to engage in various activities, such as miniature golf, movies, or bowling. On Sundays, the children would go to church, and petitioner would meet them afterwards. When he visited Marshall, petitioner would stay at a local hotel.

Petitioner stated that he and respondent rescheduled visitations on several occasions to accommodate their schedules. He admitted that he was not available when respondent and the children came from Florida for a visit on Memorial Day in 2004, but he stated that, even though the day was one of his court-ordered visitation days, he did not expect the children to come to Illinois to see him because he and respondent had not discussed a visit, as was their custom.

Petitioner testified that his home in Illinois is approximately 45 minutes away from the airport and that, on the occasions he has flown to Florida, he has arrived approximately two hours before his flight in order to allow himself enough time to pass through security. He estimated that respondent's proposed Florida home, which he had visited before, is approximately one hour away from the Jacksonville, Florida, airport. He could not recall the duration of a flight from Chicago to Jacksonville.

Petitioner stated that, if the trial court were to grant respondent's petition for removal, then he would bear a much greater burden in maintaining his relationship with his children. He also noted that some of the children's family, petitioner's nephew and sister, lived in Illinois and would be separated from the children by a move to Florida. He admitted on cross-examination that neither his nephew nor his sister had baby-sat the children or attended the parties' son's first communion.

Respondent also testified before the trial court. She testified that, upon returning to Illinois in August 2004, she chose to live in Marshall because it was close to her job in Indianapolis, Indiana, which she estimated to be approximately 45 minutes to 1½ hours away, and because she believed the schools in Marshall to be superior to others in the area. She said that she chose not to live in Chicago because of the high cost of living and because the commute to her Indianapolis job would have been prohibitive. She testified that she and the children have a month-to-month lease on a two-bedroom space on the second floor of a two-floor home.

Respondent stated that, in order to move to Illinois, she took a "step down" job in Indianapolis with the same company for which she worked in Florida. While she earned approximately $24 per hour in her job in Florida at the time she moved, she testified that no job in

Illinois has ever paid her more than $20 per hour. She also noted that Florida, unlike Illinois, did not impose a state income tax on her earnings. Respondent testified that she worked in Indianapolis until her company closed, and, after a period of unemployment, she obtained a job in Paris, Illinois, that pays her approximately $17.25 per hour. She testified that she looked for better jobs in the area surrounding Marshall, and she stated that a higher-paying job would allow her to catch up on her bill payments.

Respondent testified that she had received a Florida job offer that would pay her $25 per hour and that she would be able to obtain employment within days of moving to Florida. She also noted that, if she and the children were to move back to Florida, they would live in her mother's home, which has four bedrooms, two bathrooms, and a front and back yard, and which is located amongst several other single-family homes on a low-traffic, dead-end street. She further observed that, in Florida, the children would be near her mother, who had lived with them previously in Illinois, as well as her brother and sister-in-law, and several of the friends the children had when they previously lived in Florida. Respondent opined that the children received a better education in the Florida schools than in the Marshall schools, and she noted that, upon returning to Illinois, the children's school curriculum repeated much of what they had already been taught in Florida. She also stated that the children were much more involved in school activities in Florida. On cross-examination, respondent admitted that she had enrolled the children in Marshall schools because they were good considering their area and their size.

Respondent testified that her petition for permanent removal to Florida was not motivated by a desire to disrupt visitation between petitioner and the children. She claimed that a trip from Jacksonville, Florida, to visit petitioner would be much easier on the children than the trip from Marshall, because the Jacksonville trip would require the children to be seated for shorter periods of time. She estimated that the Jacksonville airport was approximately 35 minutes from her mother's home in Florida and that a nonstop flight from Jacksonville to Chicago lasts approximately two hours. Regarding visitation, respondent testified that she would be willing to bring the children to Illinois for half the visitations and that she would agree to allow petitioner reasonable summer, holiday, and spring break visitation.

Respondent testified that petitioner had missed a few visitations, and, on cross-examination, she clarified that petitioner sometimes contacted her in order to reschedule visitations when they conflicted with his schedule. Respondent noted that one such conflict occurred when petitioner had a party he wanted to attend during a visitation

weekend. Respondent also described an incident in which she took the children to visit petitioner while he was in the hospital, after petitioner told her that he would appreciate a visit, only to learn that petitioner had been discharged from the hospital before they arrived.

Respondent admitted on cross-examination that, even though she moved back to Illinois in August 2004, she still carried only a Florida driver's license and her car still displayed Florida license plates.

The parties agree on the legal standards to be applied in this removal case. Section 609(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/609(a) (West 2004)), which governs petitions for removal, provides as follows:

> "The court may grant leave *** to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." 750 ILCS 5/609(a) (West 2004).

Thus, in a removal case, the paramount question is whether the move is in the best interests of the children. *In re Marriage of Eckert*, 119 Ill. 2d 316, 325 (1988). Because of the children's interest in maintaining significant contact with both parents following a divorce, the mere desire of the custodial parent to move to another state, without more, is insufficient to show that the move would be in the children's best interests. *Eckert*, 119 Ill. 2d at 325. A determination of the best interests of the children in a removal case cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending upon the circumstances of each case. *Eckert*, 119 Ill. 2d at 326.

While no one factor is controlling, there are several nonexclusive factors a trial court should consider in determining whether removal is in the children's best interests. *In re Marriage of Collingbourne*, 204 Ill. 2d 498, 522 (2003). First, the trial court should consider the proposed move in terms of its likelihood of enhancing the general quality of life for both the custodial parent and the children. *Collingbourne*, 204 Ill. 2d at 522, quoting *Eckert*, 119 Ill. 2d at 326-27. Second, the trial court should consider the motives of the custodial parent in seeking the move, to determine whether the removal is merely a ruse intended to defeat or frustrate visitation. *Collingbourne*, 204 Ill. 2d at 522, quoting *Eckert*, 119 Ill. 2d at 327. Third, the court should assess the motives of the noncustodial parent in resisting removal. *Collingbourne*, 204 Ill. 2d at 522, quoting *Eckert*, 119 Ill. 2d at 327. Fourth, the trial court should consider the visitation rights of the noncustodial parent and assess whether a realistic and reasonable visitation

schedule could be reached if the move were allowed. *Collingbourne*, 204 Ill. 2d at 523, quoting *Eckert*, 119 Ill. 2d at 327. " 'When removal to a distant jurisdiction will substantially impair the noncustodial parent's involvement with the child[ren], the trial court should examine the potential harm to the child[ren] which may result from the move.' " *Collingbourne*, 204 Ill. 2d at 523, quoting *Eckert*, 119 Ill. 2d at 328.

Regarding the first *Collingbourne* factor, the trial court found that removal to Florida would cause the children's quality of life to be enhanced, based on the "superior" housing available in Florida, the greater social activities for the children in Florida, the better educational opportunities in Florida, and a greater family support system in Florida. The trial court found that "the children have little if any family interaction other than with their parents in Illinois." The trial court further found that respondent's "general economic circumstances" would be improved after removal.

Regarding the second *Collingbourne* factor, respondent's motives in seeking removal, the trial court noted that respondent was "to some degree *** attempting to re[ ]litigate" the previous divorce judgment, and it had "some concern over [respondent's] apparent attempts to relitigate the original petition for removal." In another part of its written opinion, the trial court observed that much of the evidence presented at the May 2005 trial was the same as that presented during the original divorce proceedings, and the "only significant change, which has occurred, involves the Respondent's lay off and subsequent re-hiring at a lower pay." The trial court also acknowledged that "the fact that [respondent] chose to relocate 4½ hours from Petitioner requiring a certain level of difficulty or inconvenience as it relates to visitation certainly comes into play."

Regarding the third *Collingbourne* factor, the noncustodial parent's motives in resisting removal, the trial court observed that petitioner had resisted the children's relocation since the conception of the case but that petitioner "failed to exercise the visitation granted to him," because petitioner had cancelled some visits and because there was little evidence provided regarding the quality of visitation between petitioner and the children.

Regarding the fourth *Collingbourne* factor, the removal's effect on the visitation rights of the noncustodial parent, the trial court observed that the travel time from petitioner's home to Jacksonville "would not be much longer [than] the [then-]existing car ride" and that "the break up of the trip from Florida, i.e. drive to airport, flight and drive from airport might be physically easier on the children than a straight 4½ hour car ride." Thus the trial court concluded that "[a]

more extensive and meaningful visitation schedule could be adopted if the removal were granted."

Regarding the fifth *Collingbourne* factor, the potential harm to the children from the noncustodial parent's reduced involvement in their lives, the trial court found that "there is not presently strong or significant involvement on the part of Petitioner and [*sic*] in the children's lives" and thus that, based on a possible visitation schedule that would include more extended periods of visitation, "the relationship between Petitioner and his children might actually be strengthened by removal."

Based on all the above factors, the trial court concluded that removal was in the best interests of the children, and it granted respondent's petition. Petitioner timely appeals.

■ Petitioner's first argument is that the trial court erred in finding that the proposed move would enhance the quality of life for respondent and the children. A trial court's determination of what is in a child's best interests will not be reversed on appeal unless it is against the manifest weight of the evidence. *Collingbourne*, 204 Ill. 2d at 521-22, citing *Eckert*, 119 Ill. 2d at 328. The trial court is in a far better position to assess and evaluate the parties' temperaments, personalities, and capabilities, and the presumption in favor of the result reached by the trial court is always strong and compelling in a removal case. *Collingbourne*, 204 Ill. 2d at 522. A court's decision is contrary to the manifest weight of the evidence where the opposite conclusion is clearly evident or where its findings are unreasonable, arbitrary, and not based upon any of the evidence. *In re Marriage of Mouschovias*, 359 Ill. App. 3d 348, 356 (2005).

In the unpublished order, this court noted that "[respondent] presented no evidence that her employment or housing opportunities in Florida were better than those available in Illinois." *Main*, slip op. at 6. Here, on the other hand, respondent testified regarding the superior employment opportunities awaiting her in Florida, and she also described the much larger house her mother owns in Florida. While we do not have the transcript of the original divorce proceedings, the trial court acknowledged in its written opinion that, though the facts underlying each of respondent's attempts to move to Florida were similar, there were significant differences in that respondent had lost her job and demonstrated that she received much lower pay in Illinois and that, when she moved back to Illinois, respondent chose to relocate 4½ hours away from petitioner's home. We therefore disagree with petitioner's characterization of the testimony here as identical to that presented during the original divorce proceedings. Regardless of the testimony during the divorce proceedings, we hold that the trial

court's finding here was supported by ample evidence, because, as noted, respondent testified regarding the improvement in employment and housing opportunities that awaited her move to Florida. Further, the fact that respondent chose to live so far from petitioner upon relocating to Illinois had a significant impact on the trial court's finding that a move to Florida would be in the children's best interests.

We recognize the implication here that the law with regard to removal is subject to some abuse by a custodial parent who can move far away from the noncustodial parent, yet stay within Illinois, and then request removal to a different state on the basis that removal would not increase the travel time for visitation. It is true that section 609 of the Act does not apply to intrastate transfers and that a custodial parent need not obtain permission from a court before moving to another location within Illinois. *In re Marriage of Means*, 329 Ill. App. 3d 392, 394 (2002); see *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 416-17 (1994) ("[custodial parent] cannot be criticized for her decision to *** move to [a more distant city within Illinois], in the absence of any showing that she did so in an attempt to frustrate visitation or interfere with the relationship between [the child and the noncustodial parent]"). However, in this case, in evaluating the second *Collingbourne* factor, the trial court expressed its concern for respondent's choice to relocate 4½ hours away from respondent upon moving back to Illinois. Thus, respondent's motives in relocating to a city so distant from petitioner were included in the trial court's weighing of the *Collingbourne* factors to decide whether removal from Illinois was proper.

Further, in considering issues other than removal, such as custody, a trial court could certainly consider whether a custodial parent's moving far away (within Illinois) from the noncustodial parent was motivated by a desire to frustrate the noncustodial parent's visitation rights. *In re Marriage of Divelbiss*, 308 Ill. App. 3d 198, 207-08 (1999) (affirming trial court's decision to change primary residential custody to father because mother interfered with father's visitation); see *Wycoff*, 266 Ill. App. 3d at 416-17 (trial court's decision to change primary custody of children to father may have been tenable with showing that mother relocated in order to frustrate visitation). Therefore, we conclude that it would have been improper for respondent to interfere with petitioner's visitation by moving to Marshall in order to facilitate removal to Florida, even if the move to Florida itself was not improperly motivated. However, here, the trial court considered any indications of respondent's possible improper motive in moving to Marshall in reaching its best-interests determination.

Petitioner's second argument is that the trial court erred in find-

ing that his visitation would be enhanced by the children's move to Florida. Again, we will not reverse the trial court unless its finding was against the manifest weight of the evidence. Just as above, petitioner argues that the trial court's finding is inconsistent with this court's earlier unpublished order, which noted that respondent's move to Florida hindered petitioner's visitation and that "Florida is a distant jurisdiction and would necessitate the use of air travel or lengthy car travel to facilitate visitation." *Main*, slip op. at 7, 8. However, in the current case, there was testimony that the trip to Florida would take approximately the same amount of time as the trip to Marshall, and there was testimony that the trip from Florida to Illinois would be easier for the children than the trip from Marshall to petitioner's home. Further, the trial court noted in its written ruling that one significant change between the current case and the previous case was that respondent relocated in Illinois approximately 4½ hours away from petitioner's home. Thus, we again disagree with petitioner that the trial court's finding is inconsistent with our previous unpublished order, and we disagree that the trial court's finding was unsupported by the evidence.

Petitioner further argues that the trial court erred in finding that he could receive more meaningful visitation after respondent's move because the trial court's new visitation order is nearly identical to the visitation schedule that the parties already had in place. Respondent counters by arguing that the visitation order was entered after negotiation between the parties and without a hearing before the trial court, and thus any problems petitioner has with the order are a result of his failure to request further visitation at a hearing. The record, which does contain a short hearing on the subject of visitation, belies respondent's assertion. Nevertheless, we disagree with petitioner that the new visitation schedule is identical to the parties' previous schedule. The parties' first visitation schedule gave petitioner visitation on various holidays in alternating years, alternating weekends, Father's Day, his birthday, and alternating spring vacations, and for five weeks during the children's summer vacation (to be split into one three-week interval and one two-week interval). The new visitation order, on the other hand, grants petitioner summer visitation for five consecutive weeks, visitation during approximately half of the children's winter break each year, and three-day visits on half of the children's extended school weekends. Thus, the second visitation order allows petitioner fewer, but more extended, periods of visitation.

Petitioner's third argument is that the trial court erred in questioning his motives for opposing removal and in finding that he had not exercised his visitation rights. We again disagree that the trial

court's finding was against the manifest weight of the evidence. Respondent presented testimony that petitioner missed or rescheduled visitation periods on more than one occasion, and she also opined that petitioner rarely attended the children's special events when the events did not occur during his already scheduled visitation. The trial court also noted that petitioner presented little evidence regarding the quality of visitation between petitioner and the children. While there was certainly testimony to support a finding that petitioner did exercise his visitation rights, we must defer to the trial court's evaluation, because we cannot say that the trial court's decision was so without evidentiary support as to be contrary to the manifest weight of the evidence.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GROMETER and BYRNE, JJ., concur.