*In re* MARRIAGE OF KRYSTAL LYNN GUTHRIE, Petitioner-Appellee, and BRIAN LEE GUTHRIE, Respondent-Appellant.

Fifth District   No. 5—08—0095

Opinion filed June 25, 2009.

WEXSTTEN, P.J., dissenting.

Rhonda K. Blades, of Carmi, for appellant.

Joshua M. Bradley, of Marion, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Krystal Lynn Guthrie, filed a petition for the dissolution of her marriage with respondent, Brian Lee Guthrie, in the circuit court of Jefferson County. Petitioner also filed a petition for removal, seeking permission to move with the sole child of the marriage, B.G., to Arizona. The circuit court entered a judgment of dissolution of marriage that also granted the petition for removal and stated terms for visitation by respondent. On appeal, respondent raises issues regarding whether the grant of the petition for removal was proper.

## FACTS

On August 14, 2006, petitioner and respondent were married in Phoenix, Arizona. In September 2006, they moved to Illinois. The product of their union was a boy, B.G., born January 20, 2007. On March 28, 2007, petitioner left Illinois and went to Arizona with the child. On April 23, 2007, petitioner filed a petition for the dissolution of the marriage in the circuit court of Jefferson County, Illinois.

On July 11, 2007, the court entered an agreed temporary order. The order provided visitation for respondent during the daytime on every Tuesday, Wednesday, and Thursday. Petitioner was granted leave to take B.G. on vacation to Arizona from July 3, 2007, to July 24, 2007. On November 9, 2007, petitioner filed a petition for leave to remove.

On December 20, 2007, the trial court conducted a hearing on the petition for removal. On the date of the hearing, petitioner was 21 years old, respondent was 20 years old, and B.G. was 11 months old. Petitioner described a series of moves she has made since her wedding. At first, the parties lived with petitioner's mother in Phoenix. The parties then moved to Illinois and lived with respondent's parents for three months until his parents kicked them out after a dispute. Petitioner stated that after leaving respondent's parents' home, she stayed in a local hotel room with her mother and then got an apartment in the area before returning to Phoenix. Petitioner testified that the longest continuous period she has lived in Illinois was during the pendency of this action. Petitioner testified that she met respondent in Phoenix and that she has no family or close friends in Illinois.

Petitioner testified that if the removal was granted, she would live with her mother and younger sister in a three-bedroom house in Phoenix. She testified that she has been unable to secure gainful employment in Illinois because she has no one to watch B.G. but that if allowed to return to Phoenix, she would be able to work as a cashier at a Safeway grocery store. Petitioner stated that she would facilitate visitation for respondent and that she would be able obtain travel vouchers for respondent through her father's employment with American Airlines. Petitioner also described her long-term plans to obtain a degree in nursing and possibly move closer to the region, such as Springfield, Missouri.

On cross-examination, petitioner admitted that she was on public aid. She also admitted that she was not currently able to get travel vouchers through her father's employment and that she had to purchase her own ticket for travel to the hearing. Petitioner also admitted that her mother would move to Illinois if the removal was not granted and that she would try to settle in the Chicago area.

Jean Guerena, petitioner's mother, described her residence and her expectations if petitioner and B.G. were to live in Phoenix. Guerena testified that she has been an accounts receivable clerk at Safeway for more than a decade and that petitioner's 14-year-old sister could help in the upbringing of B.G. were they to return to Phoenix.

Respondent testified that he was living with his parents in McLeansboro. He described how he interacted and played with B.G.

during visitation. Respondent described feeding, bathing, and dressing B.G. Respondent believed that a removal would hinder his relationship with B.G. Additionally, respondent testified that he could not afford the travel. On cross-examination, respondent admitted that he had dishonestly led petitioner to believe that he wanted her to return to Illinois to work through marital problems.

Respondent's father testified that respondent was an active and involved father. He described how respondent changes diapers and feeds B.G. Respondent's father testified that he and his wife would help raise B.G. if a removal was not granted.

On February 7, 2008, the court entered a judgment of the dissolution of the marriage. The court awarded petitioner custody and granted her permission to remove B.G. to Arizona. Respondent was granted visitation and petitioner was ordered to pay a portion of respondent's expenses for travel to Arizona for visitation. The court found as follows:

"8. That [petitioner and respondent] have previously entered a mediation agreement that resolves all issues of this marriage, except the issues of removal of [B.G.] to Arizona and visitation.

9. The [p]etitioner returned to the State of Illinois in April 2007 in the belief that the parties were going to reconcile their marriage when certain events occurred which caused this action to be filed.

10. The [p]etitioner has more realistic employment opportunities in the State of Arizona.

11. The [p]etitioner's family resides in Phoenix, Arizona[,] and would be and is able to provide both support and assistance to [p]etitioner and [B.G.] The [r]espondent's family is not on speaking terms with the [p]etitioner and have [sic] not previously offered to watch [B.G.] while [p]etitioner works.

12. The [p]etitioner has been the primary caregiver for [B.G.] since the time of his birth.

13. The [r]espondent has had a dismal employment record and his level of financial support to the child is inadequate for the [p]etitioner to remain in Illinois.

14. The motives of both parents in this cause are not an issue.

15. Despite the distances involved and the [c]ourt's preference for more frequent visits with less duration, the visitation schedule proposed by [p]etitioner is reasonable and realistic even taking into account that [r]espondent may not be able to take advantage of all scheduled visits.

16. The [c]ourt has considered the factors set forth in *In re Marriage of Eckert*, 119 Ill. 2d 316 (1988)[,] and any and all relevant evidence in this cause[ ] and finds that it is in the best interest of [B.G.] that [p]etitioner be allowed to remove him from the State of Illinois."

Respondent appeals.

## ANALYSIS

■ Section 609(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609(a) (West 2004)), which governs petitions for removal, provides as follows:

"(a) The court may grant leave *** to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal."

■ In *In re Marriage of Eckert*, the Illinois Supreme Court announced that "the mere desire of the custodial parent to move to another State, without more, is insufficient to show that the move would be in the [child's] best interest." *In re Marriage of Eckert*, 119 Ill. 2d 316, 325, 518 N.E.2d 1041, 1044 (1988). *In re Marriage of Eckert* established factors that should be considered by a circuit court in evaluating a petition for removal. First, the court should review the proposed move in terms of the possibility of an improved quality of life for the custodial parent and the child. *In re Marriage of Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045. Second, the court should evaluate the motives of the custodial parent in seeking the removal to determine whether the custodial parent is attempting to frustrate visitation. *In re Marriage of Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045. Third, the court should evaluate the motives of the noncustodial parent for resisting the removal. *In re Marriage of Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045. The court should examine the potential harm to the child, the child's relationship with the noncustodial parent, and the rights of the noncustodial parent. *In re Marriage of Eckert*, 119 Ill. 2d at 327-28, 518 N.E.2d at 1045-46. The court should also assess whether a reasonable and realistic visitation schedule can be developed. *In re Marriage of Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045-46.

■ In light of the factors outlined in *In re Marriage of Eckert*, the record supports the ruling of the circuit court. The circuit court found that it was in the best interest of B.G. to allow petitioner to relocate to Phoenix. In accordance with the first factor outlined in *In re Marriage of Eckert*, the court found reasons that a removal would likely improve the quality of life for the custodial parent and the child. The court noted that petitioner has been the primary caregiver for B.G. since the time of his birth. Specifically, the court found that petitioner had more realistic employment opportunities in Arizona and that her family would be able to provide both support and assistance upon a removal.

These findings, along with the testimony of petitioner and her mother at the hearing, suggest proper motives for seeking the removal and not an intent to frustrate visitation.

Respondent contends that his visitation schedule is unreasonable and unrealistic. See *In re Marriage of Johnson*, 277 Ill. App. 3d 675, 681, 660 N.E.2d 1370, 1374 (1996). The court found that despite the distance involved and a preference for more frequent visits with less duration, the visitation schedule was reasonable. Furthermore, the court specifically delineated the terms of visitation and ordered petitioner to pay a portion of the costs of respondent's travel.

Respondent also contends the court improperly considered irrelevant evidence. The court found that petitioner had been lured back to Illinois under false pretenses, that respondent's parents had forced the parties out of their house, and that respondent has a dismal employment record inadequate to support petitioner staying in Illinois. Considering the circumstances of the case, these findings were relevant to the best interest of the child. This case involved a marriage of short duration where the parties met and initially lived in Arizona. In light of this context, these findings support the conclusion that the child would be provided with a more secure and stable environment if the removal is allowed.

*In re Marriage of Eckert* noted that the determination of the best interest of a child is not subject to a simple bright-line test. *In re Marriage of Eckert*, 119 Ill. 2d at 326, 518 N.E.2d at 1045. The factors in *In re Marriage of Eckert* are not exclusive, and a court may consider other evidence relevant to the circumstances of the case. See *In re Marriage of Collingbourne*, 204 Ill. 2d 498, 523, 791 N.E.2d 532, 546 (2003); *In re Marriage of Smith*, 172 Ill. 2d 312, 321, 665 N.E.2d 1209, 1213 (1996). The paramount concern is the best interest of the child. *In re Marriage of Johnson*, 277 Ill. App. 3d 675, 680-81, 660 N.E.2d 1370, 1374 (1996). The findings of the court were relevant to the best interest of the child, considering the circumstances of the case, and indicate a deliberate assessment of the personalities and capabilities of the parties by the finder of fact.

The circuit court had the best opportunity to observe the parties and assess their personalities and capabilities. See *In re Marriage of Eckert*, 119 Ill. 2d at 330, 518 N.E.2d at 1047. A ruling on a removal should not be reversed unless it is against the manifest weight of the evidence. *In re Marriage of Main*, 361 Ill. App. 3d 983, 989, 838 N.E.2d 988, 994 (2005). As *In re Marriage of Eckert* recognized, " 'The presumption in favor of the result reached by the trial court is always strong and compelling in this type of case.' " *In re Marriage of Eckert*, 119 Ill. 2d at 330, 518 N.E.2d at 1047, quoting *Gallagher v. Gallagher*,

60 Ill. App. 3d 26, 31-32, 376 N.E.2d 279, 283 (1978). The record supports the grant of the petition for removal.

## CONCLUSION

Accordingly, the order of the circuit court of Jefferson County is hereby affirmed.

Affirmed.

SPOMER, J., concurs.

PRESIDING JUSTICE WEXSTTEN, dissenting:

In my opinion, the circuit court's decision to grant the petition for removal was against the manifest weight of the evidence. Therefore, I respectfully dissent from the majority decision.

With regard to the *In re Marriage of Eckert* factors, the court should first consider "the proposed move in terms of likelihood for enhancing the general quality of life for both the custodial parent and the children." *In re Marriage of Eckert*, 119 Ill. 2d 316, 326-27, 518 N.E.2d 1041, 1045 (1988). The circuit court, with the majority of this court agreeing, found that the petitioner had met this factor by having "more realistic employment opportunities in Arizona." 392 Ill. App. 3d at 173. Additionally, the court found that, upon removal, the petitioner would have the added support and assistance of her mother. According to *In re Marriage of Collingbourne*, any enhancement in the custodial parent's quality of life does not automatically translate into an enhancement of the minor child's quality of life. *In re Marriage of Collingbourne*, 204 Ill. 2d 498, 528, 791 N.E.2d 532, 548 (2003). Also, as the Illinois Supreme Court stated in *In re Marriage of Eckert*, "the mere desire of the custodial parent to move to another State, without more, is insufficient to show that the move would be in the children's best interest." *In re Marriage of Eckert*, 119 Ill. 2d at 325, 518 N.E.2d at 1044.

In this case, the petitioner testified that if allowed to move to Arizona, she would be able to obtain employment as a cashier making $8 an hour at a Safeway grocery store. However, this employment opportunity is not definite because the petitioner was only told by an assistant manager that an effort would be made to rehire her. *Cf. In re Marriage of Collingbourne*, 204 Ill. 2d at 524, 791 N.E.2d at 546 (the petitioner sought a removal because she had a definite job offer with a higher salary in another state). The petitioner's testimony that she can obtain employment as a cashier at a Safeway grocery store is merely speculative. Given the petitioner's education and employment

history, she is limited to finding employment at minimum wage jobs, and she has offered no evidence to suggest that Arizona offers her a greater opportunity for finding this type of employment. Additionally, there is no evidence in the record that the petitioner is unable to obtain a comparable job in Illinois. *Cf. In re Marriage of Parr*, 345 Ill. App. 3d 371, 379-80, 802 N.E.2d 393, 400-01 (2003) (where the petitioner sought a removal to Colorado to accept a job offer, because she was unsuccessful in her efforts to find a job closer to home, the court found that the petitioner had "done a thorough job search" in areas closer to home and that the petitioner's reasons for the removal were neither frivolous nor inadequate). The petitioner testified that she had applied for employment in Illinois but was unable to accept any offered jobs because the cost of daycare would exceed her income. However, there is no evidence to suggest that the respondent would be unwilling to help watch the minor child to lessen the daycare expenses. Also, absent unspecified assistance from the petitioner's mother and family friends, there is no evidence in the record regarding the cost of daycare in Arizona or any comparison of that cost between the two states. Because the increase in the petitioner's economic opportunities is speculative at best, the only possible benefit that she seems to gain by the move is having her mother's support and assistance in raising the child. This benefit alone is insufficient to justify a removal to Arizona, especially since the petitioner's mother has been able to provide monetary support to the petitioner while the petitioner has lived in Illinois.

Although the quality of the petitioner's life may be enhanced by the additional support and assistance of her mother, any enhancement to the minor child's quality of life is not established by the record. Under *In re Marriage of Eckert*, the court should consider the enhancement to the quality of life for both the custodial parent and the child. *In re Marriage of Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045. Any benefit that the minor child gains from moving to Arizona is overshadowed by the fact that he will be losing a close relationship with a father, who has been present throughout his life.

The third and fourth factors that the court should consider under *In re Marriage of Eckert* are "the motives of the custodial parent in seeking the move" and "the motives of the noncustodial parent in resisting the removal." *In re Marriage of Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045. The petitioner argues that the respondent's motives in resisting the move are questionable, as the respondent engaged in dishonorable behavior by luring the petitioner back to Illinois on the pretense of working out their marital problems. Notwithstanding the fact that the respondent admitted to this dishonest behavior on

cross-examination, the petitioner was under no obligation to remain in Illinois and file for a dissolution of the marriage in this state. Accordingly, even though the respondent's behavior has been questionable in the past, there is insufficient evidence to support a finding that his motives in resisting the removal are improper. The evidence also shows that the petitioner's motives in seeking the removal are proper. As the circuit court stated in the judgment for the dissolution of the marriage, the motives of both parents in this cause are not an issue.

The last factor to be considered under *In re Marriage of Eckert* is whether "a realistic and reasonable visitation schedule can be reached if the move is allowed." *In re Marriage of Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045-46. According to the judgment for the dissolution of the marriage, the respondent was awarded visitation for one week of every month in the State of Arizona unless the respondent flies the minor child to Illinois. The respondent also receives visitation for two weeks in June, three weeks in July, and one week in August. While the respondent is in Arizona exercising visitation, the petitioner is to allow the respondent to stay in her home or that of her mother. The petitioner is also required to pay one-half of all airline travel expenses and provide at least two free American Airlines travel vouchers per year. The respondent argues that this schedule is not realistic due to his inability to afford such frequent travel. "A reasonable visitation schedule is one that will preserve and foster the child's relationship with the noncustodial parent." *In re Marriage of Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046. When a noncustodial parent has been diligent about exercising visitation rights, the court should be hesitant about interfering with those rights " 'by permitting removal of the children for frivolous or unpersuasive or inadequate reasons.' " *In re Marriage of Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046, quoting *D'Onofrio v. D'Onofrio*, 144 N.J. Super. 200, 206, 365 A.2d 27, 30 (1976). Additionally, "[w]hen removal to a distant jurisdiction will substantially impair the noncustodial parent's involvement with the child, the trial court should examine the potential harm to the child which may result from the move." *In re Marriage of Eckert*, 119 Ill. 2d at 328, 518 N.E.2d at 1046.

Although this schedule may seem reasonable because it allows the respondent significant visitation time with the minor child, the schedule is totally unrealistic and unlikely to be followed. The respondent is currently working at a minimum wage job without health care benefits. It is hard to imagine how he will continue to have this job when, at a minimum, he will be taking off one week out of every month. Additionally, it is unrealistic to expect that either the petitioner or the respondent will have the necessary funds to support

this once-a-month travel. Although the judgment requires the petitioner to provide at least two travel vouchers to the respondent every year, the record is unclear whether the petitioner will actually be able to meet this requirement. According to the record, the petitioner will be obtaining these vouchers from her father; however, there is no guarantee that her father will be able to provide the travel vouchers. It is unlikely that the respondent will be able to afford the frequent travel to Arizona without the vouchers. According to the judgment, the petitioner is to allow the respondent to stay in her home or that of her mother when he is in Arizona exercising visitation. Although this seems like a reasonable solution to lessen travel expenses for the respondent, this arrangement is again unrealistic and likely to deter the respondent from exercising visitation. If this arrangement is unsuccessful, then the respondent will have to pay the additional cost for hotel accommodations. The unrealistic visitation schedule is likely to substantially impair the respondent's involvement with the child.

The supreme court has noted that "the *Eckert* factors 'are not exclusive' " and are only factors to be considered and balanced in determining whether removal is in the child's best interest. *In re Marriage of Collingbourne*, 204 Ill. 2d at 523, 791 N.E.2d at 545-46, quoting *In re Marriage of Smith*, 172 Ill. 2d 312, 321, 665 N.E.2d 1209, 1213 (1996). No individual factor is controlling, and the weight accorded to each will depend on the individual facts of each case. *In re Marriage of Collingbourne*, 204 Ill. 2d at 523, 791 N.E.2d at 546. Absent speculation, the facts of this case are devoid of any benefit to the child, particularly when balanced against the loss of his relationship with his father due to the unrealistic belief that the proposed visitation schedule is even remotely possible.

Accordingly, I believe that the application of the *Eckert* factors to this case demonstrates that the best interest of the child would be to deny the petition for removal. Therefore, the decision of the circuit court should be reversed as against the manifest weight of the evidence.