

FILED

Nov 20 2019, 5:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jarvis Peele,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 20, 2019

Court of Appeals Case No.
19A-CR-1160

Appeal from the Clark Circuit
Court

The Honorable Bradley B. Jacobs,
Judge

Trial Court Cause No.
10C02-1708-F6-1587

**Najam, Judge.**

## Statement of the Case

[1] Jarvis Peele appeals his convictions for possession of methamphetamine, as a Level 6 felony, and two counts of resisting law enforcement, each as a Class A misdemeanor, following a jury trial. Peele raises two issues for our review, but

we find the following issue dispositive: whether the trial court erred when it granted the State's motion to continue Peele's trial, outside the timeframe required by Peele's speedy-trial request, based on purportedly unavailable lab test results that the State had not requested from the State Police Laboratory until the same day the State asked the court to continue Peele's trial. We reverse.

## Facts and Procedural History

[2] In August of 2017, Jeffersonville law enforcement officers investigated an apparently abandoned home. Officers entered the home through an open garage door and found Peele inside. Peele was lethargic and not following officer commands, and, when officers attempted to place Peele in handcuffs, a struggle ensued. Officers eventually subdued Peele, searched his person, and found methamphetamine in a pocket of his pants.

[3] The State charged Peele with possession of methamphetamine, as a Level 6 felony, and two counts of resisting law enforcement, each as a Class A misdemeanor. Peele requested a speedy trial at his initial hearing, and the trial court set his jury trial date for October 17 in accordance with that request.

[4] Thirteen days before the commencement of Peele's jury trial, the court held a status conference. Peele was present at that conference in person and by counsel. The court engaged the parties in the following colloquy:

> THE COURT: So . . . we are set for [a] speedy [trial] and when is that trial set for?

\* \* \*

[THE DEPUTY PROSECUTOR]: . . . October 17th, Judge, but the State is going to have to request a 90[-]day continuance for the labs.

THE COURT: Labs? Ok. So, we haven't seen that[;] as of now, Mr. Peele, we're still set for October 17th. No change in the bond, no change in the trial date. *When the State requests . . . a continuance on the trial date . . . we'll assume your attorney to object and we'll . . . set that for a hearing as well.*

[PEELE]: Alright.

Tr. Vol. 1 at 9-10 (emphasis added).

[5] The next day, the State filed its written motion to continue. The totality of the State's argument in support of its motion was as follows:

1) That the . . . case is currently set for a Jury Trial on October 17, 2017;

2) That the [S]tate has not received the lab analysis from the Indiana State Police lab;

3) That pursuant to Criminal Rule 4(D):

. . . there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) da[y]s, the cause may be continued . . . .

4) That the State's motion is not made for the purposes of prejudice or undue delay.

Appellant's App. Vol. 2 at 33. The trial court granted the State's request that same day and set the next status conference for February 28, 2018, and Peele's jury trial for March 20, 2018.

[6] One week after the State filed its motion to continue, on October 12, Peele wrote a letter to the court. In that letter, Peele asked to have his court-appointed counsel replaced because his counsel had "put [Peele's] constitutional rights in jeopardy . . . by not filing the proper motions and/or failing to prepare a defense against the State[']s continuance of a trial date past [Peele's] fast and speedy trial date." *Id.* at 36. Peele further requested "an immediate court date . . . to review these matters in open court." *Id.*

[7] On October 16, 2017, Peele informed the court that he had obtained substitute counsel. In early November, Peele filed a *pro se* motion for discharge, which, in late November, his substitute counsel refiled with the court. In late January of 2018, the trial court held a hearing on Peele's discharge requests. At that hearing, the State conceded that it did not request lab results from the State Police Laboratory until October 4th, the same day the State first informed the court that it intended to file its motion to continue pursuant to Indiana Criminal Rule 4(D). After the hearing, the court denied Peele's request for discharge. Thereafter, a jury found him guilty as charged, which the trial court reduced to judgment. This appeal ensued.

# Discussion and Decision

[8] Peele requested a speedy trial and asserts on appeal that the trial court granted the State's October 5, 2017, motion to continue in violation of his speedy-trial rights. The right of an accused to a speedy trial is guaranteed by the United States and Indiana Constitutions. U.S. Const. amend. VI; Ind. Const. art. 1, § 12. Indiana Criminal Rule 4 implements those rights and generally requires a criminal defendant to be brought to trial within seventy days of his speedy-trial request. Ind. Criminal Rule 4(B)(1).

[9] However, among other reasons for extensions of that timeframe, Indiana Criminal Rule 4(D) provides as follows:

> If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, *that reasonable effort has been made to procure the same* and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

(Emphasis added.) As another panel of this Court recently explained in a similar appeal:

> Thus, in order to grant a continuance as provided in Rule 4(D), the trial court must be satisfied that the State made a reasonable effort to procure the evidence. *Smith v. State*, 802 N.E.2d 393, 401 (Ind. Ct. App. 2013), *trans. denied*. Whether the requested delay is reasonable should be judged according to the circumstances of the particular case. *Id.* In addition, we evaluate

the reasonableness of the State's request for a trial delay in light of the information known or available to it at the time of the request. *Small v. State*, 112 N.E.3d 738, 743 (Ind. Ct. App. 2018). As a general rule, a trial court's decision to grant a Rule 4(D) continuance is reviewed for an abuse of discretion. *Smith*, 802 N.E.2d at 401.

*Dilley v. State*, ___ N.E.3d ___, No. 19A-CR-173, 2019 WL 5415844, at *3 (Ind. Ct. App. Oct. 23, 2019).

[10] Peele's argument is, in essence, that the State did not make a "reasonable effort" to procure the lab test results pursuant to Rule 4(D) when the State requested those results on the same day it informed the court that it would move to continue Peele's trial. In addressing a similar issue in *Dilley*, we stated:

Dilley invoked his right to a speedy trial at the earliest possible opportunity at his initial hearing on April 10, 2018. Dilley's invocation of his speedy trial right meant that the State had until June 19, 2018, to bring him to trial. At Dilley's initial hearing, the trial court set Dilley's trial for June 18, 2018. Dilley never retracted his speedy trial request, and the June 18, 2018, trial date never changed before the State filed its Rule 4(D) continuance motion.

At the final pre-trial conference on May 31, 2018, the prosecutor informed the trial court that the only matter "outstanding" for trial preparation was the test results. In her Rule 4(D) continuance motion filed June 1, 2018, a mere seventeen days before trial, the prosecutor averred that the continuance was necessary because the testing results were "not yet prepared." In her argument at the hearing on the continuance motion, the prosecutor represented to the trial court that she had personally contacted the director of the laboratory "to confirm that the lab

results would be back by June 19th . . . ." The implication of these statements was that testing was already underway. The prosecutor did not inform the trial court in either her written or oral motions that the evidence had not been conveyed to the State Laboratory for testing and was, in fact, not conveyed until June 4, 2018, after the written continuance motion was filed. This was a fact that had to have been known to the prosecutor when she argued the continuance motion on June 5, 2018, and which she should have made known to the trial court before it rendered its ruling.

Rule 4(D) requires that the State show "that reasonable effort has been made to procure" the missing evidence. It cannot be said that reasonable efforts had been made to procure the evidence for purposes of Rule 4(D) if that effort had not actually been commenced by initiating the testing process before the filing of the continuance motion. *Cf. Chambers v. State*, 848 N.E.2d 298, 304 (Ind. Ct. App. 2006) (finding that the State initially made reasonable efforts to procure test results where, on the same day speedy trial request was made, it sent drugs to the laboratory and procured expedited processing), *trans. denied*. . . .

*Id.* at *4 (record citations omitted).

[11] Our reasoning and holding in *Dilley* is equally applicable here. Peele invoked his speedy-trial rights at his earliest opportunity, at his initial hearing, and his October 17, 2018, trial date remained unchanged until the State's Rule 4(D) motion to continue. At the final status conference prior to the trial date, a mere thirteen days before the trial was set to commence, the deputy prosecutor informed the court that the State would need a continuance "for the labs." Tr. Vol. 1 at 9-10. And, in its written motion the next day, the State informed the

court that it "ha[d] not received the lab analysis." Appellant's App. Vol. 2 at 33.

[12] The obvious—if not intended—implication of the deputy prosecutor's representations to the court was that testing was already underway. But the deputy prosecutor did not inform the court either orally at the status conference or in the written motion that the evidence either had not even been conveyed to the State Police Laboratory or had only been sent within, at most, the prior twenty-four hours. "This was a fact that had to have been known to the prosecutor" when he moved to continue, and it is a fact he "should have made known to the trial court before it rendered its ruling." *Dilley*, 2019 WL 5415844, at *4.

[13] There is no question that the State failed to take reasonable efforts to procure the lab test results for purposes of Rule 4(D), and, as such, the trial court erred when it granted that motion. We hesitate to use the term "abuse of discretion," however, as the basis for the error was hidden from the court by the deputy prosecutor at the time of his motion. Indeed, we have no hesitation in concluding that the deputy prosecutor's omission of this obviously relevant information supports an inference that the State had not by then made a reasonable effort to procure the evidence.

[14] Nonetheless, the State asserts on appeal that Peele waived his speedy-trial request by not objecting to the new trial date at his first opportunity. We reject this assertion for several reasons. First, at the October 4 status conference, the

trial court expressly told Peele that he did not have to bother to object because such objection would be "assume[d]." Tr. Vol. 1 at 9-10. Second, we do not hesitate to conclude that, in any event, Peele's October 12 handwritten letter to the court sufficed to put the court on notice that he objected to the new trial date and desired new counsel because of it. *Cf. Showalter v. Town of Thorntown*, 902 N.E.2d 338, 342 (Ind. Ct. App 2009) (noting that the rule of waiver "in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider.") (quotation marks omitted). Third, as our Supreme Court has made clear, we prefer to decide appeals on their merits, and there is nothing about any purported waiver here that justifies disregarding the clear violation of Peele's speedy-trial rights. *E.g.*, *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 623 (Ind. 2019).

[15] Peele preserved his speedy trial rights but was not brought to trial until well after the expiration of seventy days. As such, he was entitled to discharge of the charges against him, and the trial court erred when it granted the State's Rule 4(D) motion to continue.

[16] Reversed.

Bailey, J., and May, J., concur.